# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ALLEN RISENHOOVER, | Case No. 1:18-cv-00486-AWI-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION TO GRANT RESPONDENT'S MOTION TO DISMISS AND DISMISS PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| WILLIAM MUNIZ,[1] | ORDER DIRECTING CLERK OF COURT TO AMEND CAPTION |
| Respondent. | |
| | (ECF No. 14) |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. As the instant petition was filed outside 28 U.S.C. § 2244(d)(1)'s one-year limitation period, the undersigned recommends granting Respondent's motion to dismiss and dismissing the petition.

## I.

## BACKGROUND

On October 31, 2012, a jury in the Tulare County Superior Court found Petitioner guilty of ten counts of sexual abuse against his daughter, who was between eight and thirteen years old when the abuse occurred. Petitioner was sentenced to an aggregate term of eighty-eight years to

---

[1] William Muniz is the Warden of Salinas Valley State Prison ("SVSP"), where Petitioner is currently incarcerated. Accordingly, William Muniz is substituted as Respondent in this matter. See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 894 (9th Cir. 1996).

1

life. (LD 1; LD 2 at 2).² On September 2, 2015, the California Court of Appeal, Fifth Appellate District affirmed the judgment. (LD 2). On November 18, 2015, the California Supreme Court denied the petition for review. (LDs 3, 4). Petitioner did not file any state post-conviction collateral challenges regarding the judgment.

On March 28, 2018,³ Petitioner constructively filed the instant federal habeas petition. (ECF No. 1). On June 11, 2018, Respondent filed a motion to dismiss the petition as untimely and unexhausted. (ECF No. 14). Petitioner filed an opposition, and Respondent filed a reply. (ECF Nos. 18, 19). The parties also submitted supplemental briefs on equitable tolling per the Court's order. (ECF Nos. 23, 27).

## II.

## DISCUSSION

### A. Statute of Limitations

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions. AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). Section 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

² "LD" refers to the documents lodged electronically by Respondent on June 11, 2018, and October 10, 2018. (ECF Nos. 16, 28). LD page numbers refer to the page numbers located at the bottom of the page.

³ Pursuant to the mailbox rule, a *pro se* prisoner's habeas petition is filed "at the time . . . [it is] delivered . . . to the prison authorities for forwarding to the court clerk." Hernandez v. Spearman, 764 F.3d 1071, 1074 (9th Cir. 2014) (alteration in original) (internal quotation marks omitted) (quoting Houston v. Lack, 487 U.S. 266, 276 (1988)). The mailbox rule applies to both federal and state habeas petitions. Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010). The Court notes that Respondent applied the mailbox rule in the motion to dismiss. (ECF No. 14 at 2 n.2).

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In most cases, the limitation period begins running on the date that the petitioner's direct review became final or the expiration of the time for seeking such review. Petitioner's conviction became final on February 16, 2016, when the ninety-day period to file a petition for writ of *certiorari* in the United States Supreme Court expired. See Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). Pursuant to § 2244(d)(1)(A), the one-year limitation period commenced running the following day, February 17, 2016, and absent tolling, was set to expire on February 16, 2017. See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (citing Fed. R. Civ. P. 6(a)).

**B. Statutory Tolling**

The "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period. 28 U.S.C. § 2244(d)(2). Here, however, Petitioner did not file any state post-conviction collateral challenges regarding the judgment. Accordingly, Petitioner is not entitled to statutory tolling under § 2244(d)(2), and the instant federal petition is untimely unless Petitioner establishes that equitable tolling is warranted.

**C. Equitable Tolling**

The limitation period is subject to equitable tolling if the petitioner demonstrates "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). The petitioner bears the "heavy burden" of showing that he is entitled to equitable tolling. Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010) (per curiam). In the instant case, Petitioner asserts that the lack of access to his legal mail, including trial transcripts, and his mental health issues prevented Petitioner from timely filing a petition. (ECF No. 18 at 1; ECF No. 23).[4]

1. Transcripts

In support of his equitable tolling argument, Petitioner claims that the California Department of Corrections and Rehabilitation ("CDCR") mishandled his trial transcripts, which his appellate counsel shipped in November 2015 but Petitioner did not receive. (ECF No. 23 at 8, 11–12, 18–19). In order to be entitled to equitable tolling, "[t]he prisoner must show that the 'extraordinary circumstances' were the *cause* of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (emphasis added) (citing Stillman v. LaMarque, 319 F.3d 1199, 1203 (9th Cir. 2003); and Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (holding that the prisoner is required "to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing")).

Here, Petitioner does not explain why the trial transcripts were necessary for Petitioner to be able to file his petition by, for example, identifying claims he was prevented from raising without access to the transcripts. The Court notes that the petition raises the following claims: (1) erroneous exclusion of evidence of the complaining witness's psychological makeup; (2) erroneous admission of evidence of sexual conduct between Petitioner and his wife; (3) denial of effective assistance of counsel; and (4) judicial bias. None of these claims appear to require the trial transcripts in order to be adequately raised. Accordingly, Petitioner has not established the existence of an extraordinary circumstance that caused Petitioner's untimeliness based on his lack of access to transcripts.

2. Belated Awareness of AEDPA Deadline

Petitioner claims that he first became aware of AEDPA's one-year limitation period in

---

[4] Page numbers refer to the ECF page numbers stamped at the top of the page.

November 2017 when he received a letter from his appellate counsel in response to Petitioner's inquiry regarding the trial transcripts. (ECF No. 23 at 11, 17). Counsel also enclosed a copy of another letter, which counsel had sent Petitioner when the California Supreme Court declined to hear Petitioner's case, that "discussed how [Petitioner] could have obtained forms to proceed in federal court by filing within one year of the date the case became final in state court." (Id. at 18). Petitioner attributes his belated awareness of AEDPA's one-year limitation period to the CDCR's alleged mishandling of his legal mail. (Id. at 17). However, ignorance of the law does not constitute an extraordinary circumstance warranting equitable tolling. See Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."). Additionally, Petitioner has not alleged that he did not have access to library materials containing the pertinent information regarding AEDPA's limitation period. See Roy v. Lampert, 465 F.3d 964, 971 (9th Cir. 2006) (finding lack of requisite AEDPA materials in law library combined with petitioner's lack of knowledge of limitation period would constitute extraordinary circumstances); Whalem/Hunt v. Early, 233 F.3d 1146, 1147 (9th Cir. 2000) (en banc) (per curiam). Accordingly, Petitioner has not established the existence of an extraordinary circumstance based on his belated awareness of AEDPA's one-year limitation period.

### 3. Petitioner's Mental Health

In support of his equitable tolling argument, Petitioner asserts that he has suffered extraordinary mental health issues, including chronic depression, multiple suicide attempts, and major depressive disorder. (ECF No. 23 at 7). Based on the mental health records submitted by the parties, Petitioner has been diagnosed with major depressive disorder and is likely in the bipolar spectrum. (ECF No. 23 at 33; LD 16 at 37, 57, 61, 67, 73, 90, 98, 128, 131; LD 17 at 3, 5, 28; LD 18 at 2, 4, 32–33).

In Bills v. Clark, 628 F.3d 1092 (9th Cir. 2010), the Ninth Circuit articulated the following standard for equitable tolling based on mental impairment:

> (1) *First,* a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, by demonstrating the impairment was so severe that either

> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.

Bills, 628 F.3d at 1099–1100 (footnote omitted) (citing Holland, 560 U.S. at 649).

The Supreme Court has recognized that "[m]ental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways." Indiana v. Edwards, 554 U.S. 164, 175 (2008). Accordingly, the Court will undertake a review of the relevant time period and determine whether at any point Petitioner's mental impairment was so severe that he "was unable rationally or factually to personally understand the need to timely file" or that his "mental state rendered him unable personally to prepare a habeas petition and effectuate its filing." Bills, 628 F.3d at 1100.

### a. February 17, 2016 to March 30, 2016

Based on the records submitted the parties, Petitioner was admitted to the Department of State Hospitals ("DSH") on February 16, 2016 and discharged on March 8, 2016. (ECF No. 23 at 47). It appears that this was followed by placement in a mental health crisis bed ("MHCB")[5] until March 30, 2016. (LD 16 at 1–18). Subsequently, Petitioner was placed in the enhanced outpatient program ("EOP"). (LD 16 at 21). The Court assumes, without deciding, that Petitioner's mental condition was severe enough to constitute an extraordinary circumstance during this period from February 17, 2016 to March 30, 2016.[6]

### b. April 2016 to June 2017

From April 2016 through at least June 2017, Petitioner was placed in EOP, which is a "level of care is for inmates who suffer 'Acute Onset or Significant Decompensation of a serious mental disorder characterized by increased delusional thinking, hallucinatory experiences, marked changes in affect, and vegetative signs with definitive impairment of reality testing

---

[5] "MHCBs are for inmates who are markedly impaired and/or dangerous to others as a result of mental illness, or who are suicidal, and who require 24-hour nursing care. The MHCB level of care is also for inmates 'awaiting transfer to a hospital program' and for inmates 'being stabilized on medication prior to transfer' to a lower level of care." Coleman v. Schwarzenegger, 922 F. Supp. 2d 882, 903 n.24 (E.D. Cal. 2009) (citations omitted).

[6] The records provided by Petitioner state that he was placed at the EOP level of care on March 24, 2016, while the records obtained by Respondent from SVSP show that Petitioner was still in a MHCB on March 30, 2016. (ECF No. 23 at 38; LD 16 at 18). The Court will give Petitioner the benefit of the more favorable date and assume the existence of an extraordinary circumstance until March 30, 2016.

and/or judgment,' and who are unable to function in the general prison population but do not require twenty-four hour nursing care or inpatient hospitalization." Coleman v. Schwarzenegger, 922 F. Supp. 2d 882, 903 n.24 (E.D. Cal. 2009) (citation omitted).

From April 2016 through June 2017, progress notes indicate that Petitioner was "alert, cooperative, and oriented" and "show[ed] concentration, attention and comprehension." Petitioner's thought process was described as "linear and goal-oriented." Petitioner participated in group therapy sessions and denied any current psychosis, suicidal ideation, homicidal ideation, plan, or intent. (LD 16 at 25, 36, 38–41, 43, 54, 56, 58–60, 62–66, 68–72, 74, 86–89, 91–97, 99–101, 103–04, 116, 118–22, 124–27, 129–30, 132–35; LD 17 at 1–2, 4, 6–10, 18–19, 21–27). Throughout this time period, Petitioner rated his depression in the range of four to seven on a ten-point scale (compared to a baseline of five);[7] his anxiety in the range of five to eight (baseline of six);[8] intermittent passive thought of self-injurious behavior in the range of three to seven (baseline of six);[9] intermittent passive suicidal ideation without any plans of self-harm in the range of three to seven (baseline of seven).[10] (LD 16 at 20, 25, 38–41, 54, 58–59, 62–65, 69–71, 76, 79, 86, 91, 94, 101, 106, 109, 124; LD 17 at 21).

Petitioner argues his medical records demonstrate that he was unable to file a timely federal habeas petition due to "extraordinary mental health issues so severe that any attempt would have triggered a suicidal episode" and that he has diligently pursued his rights once he had "the mental stability necessary" to do so. (ECF No. 23 at 8). For purposes of comparison, in March 2018, the month that Petitioner filed the instant federal habeas petition, Petitioner was still designated to the EOP level of care. (LD 18). Progress notes indicate that Petitioner was "alert, cooperative, and oriented" and "show[ed] concentration, attention and comprehension." Petitioner's thought process was described as "linear and goal-oriented," and his thought content

---

[7] Petitioner rated his depression as four on one occasion; as five on eight occasions; as six on twelve occasions; and as seven on three occasions.
[8] Petitioner rated his anxiety as five on seven occasions; as six on seven occasions; as seven on eight occasions; and as eight on two occasions.
[9] Petitioner rated his intermittent passive thought of self-injurious behavior as three on two occasions; as four on three occasions; as five on five occasions; as six on three occasions; and as seven on five occasions.
[10] Petitioner rated his intermittent passive suicidal ideation without any plans of self-harm as three on one occasion; as four on three occasions; as five on five occasions; as six on four occasions; and as seven on five occasions.

7

was without suicidal or homicidal ideation. (LD 18 at 2, 41). On March 16, 2018, Petitioner rated his depression as six on a ten-point scale; his anxiety as seven; intermittent passive thought of self-injurious behavior as seven; intermittent passive suicidal ideation without any plans of self-harm as seven. (LD 18 at 41).

Given that the record before this Court does not demonstrate a material difference in Petitioner's mental condition during the limitation period compared to the time he filed the instant federal habeas petition, the Court finds that Petitioner's mental condition was not so severe that he "was unable rationally or factually to personally understand the need to timely file" or that his "mental state rendered him unable personally to prepare a habeas petition and effectuate its filing." <u>Bills</u>, 628 F.3d at 1100. Accordingly, Petitioner has not established the existence of an extraordinary circumstance from April 2016 through June 2017 based on mental impairment.

4. <u>Conclusion</u>

In sum, Petitioner has not established that he is entitled to equitable tolling. The Court has assumed that from February 17, 2016 to March 30, 2016, Petitioner's mental state constituted an extraordinary circumstance, but Petitioner has not established the existence of an extraordinary circumstance for approximately fifteen months thereafter, which exceeds the one-year limitation period. As both prongs of the equitable tolling standard must be satisfied and Petitioner has failed to satisfy the extraordinary circumstance prong, the Court need not reach the question of whether Petitioner pursued his rights diligently during the relevant time period. Therefore, the instant federal petition was not timely filed, and dismissal is warranted on this ground.[11]

## III.

## RECOMMENDATION & ORDER

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. Respondent's motion to dismiss (ECF No. 14) be GRANTED; and

---

[11] As the Court finds that the petition was untimely, it will not address Respondent's alternative argument that the petition should be dismissed as unexhausted.

2. The petition for writ of habeas corpus be DISMISSED as untimely.

Further, the Clerk of Court is DIRECTED to amend the caption in this matter to reflect the name of William Muniz as Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 11, 2018**            /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE